[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Facts
Patrice Ward, in her individual capacity and as the administratrix of the estate of Raegan McBride, her two-year daughter, brought an action against several defendants, including the Village for Families and Children, Inc. ("The Village"), for damages arising out of an incident which occurred on February 24, 1997.
According to plaintiffs' amended complaint dated July 27, 2000, Raegan McBride attended a day care program operated by Kathy Greene beginning in January of 1997. Ms. Greene, from April of 1990 through the date of the incident, also provided services for children placed in her foster care through a contractual arrangement with The Village. Ms. Greene allegedly abused several of these foster children and The Village became aware of CT Page 2464 many of these incidents. The plaintiffs claim that The Village failed to notify the Connecticut Department of Children and Families ("DCF"), although required by statute to do so, because it feared a possible negative impact on The Village's business.
On February 24, 1997, it is claimed that Ms. Greene shook, hit or otherwise caused Raegan McBride to strike her head while attending Ms. Greene's day care program, thereby causing the child's death by blunt force trauma.
Counts nine through nineteen of the amended complaint are directed against The Village. Six of those counts have already been stricken either by agreement of the parties or by order of the court on previously filed motions to strike. The Village now moves for summary judgment on the remaining counts against it, i.e., counts twelve, sixteen, seventeen, eighteen and nineteen, on the grounds that no genuine issues of material fact exist to support the claims in those counts and that The Village had no duty to Raegan McBride. The plaintiffs claim The Village's duty to Raegan McBride arises by virtue of section 17a-101 of the Connecticut General Statutes, the "mandated reporter" statute. The court heard oral argument on The Village's motion for summary judgment on December 3, 2001 and December 12, 2001, and rendered its decision granting The Village's motion as to all remaining counts against it on January 9, 2002.[1]
Discussion
Pursuant to Practice Book section 17-45, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts. . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Insurance Co., 245 Conn. 374, 381,713 A.2d 820 (1998). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Witt v. St. Vincent's MedicalCT Page 2465Center, 252 Conn. 363, 372 n. 7, 746 A.2d 753 (2000).
Count Twelve
Count twelve, captioned "Wrongful Death", alleges The Village's actions were the proximate cause of Raegan McBride's injuries and subsequent death. The Village contends it had no duty to Raegan McBride and, therefore, cannot be held liable for damages under section 52-555 of the General Statutes, Connecticut's wrongful death statute.
It is undisputed that Raegan McBride attended Ms. Greene's day care program; her mother became aware of the program through a family friend. The Village, a private child placement agency, had a contract with Ms. Greene to provide services for foster children. The following facts are uncontradicted. The Village did not have a contract with Ms. Greene to provide day care services at the time of the incident in 1997; The Village eliminated its day care program altogether in the summer of 1995. Patrice Ward had no contact with any representatives or employees of The Village in connection with the placement of her daughter at Ms. Greene's day care facility.
During the course of oral argument on The Village's motion for summary judgment, plaintiffs' counsel was asked repeatedly to provide a basis for the finding of a duty owed from The Village to Raegan McBride or Patrice Ward. Plaintiffs' counsel stated the duty arose by virtue of section17a-101 of the Connecticut General Statutes.[2] The plaintiffs rely solely upon the provisions of this statute. If there is no private right of action under section 17a-101, et seq., summary judgment would have to enter as to this count because the plaintiffs do not allege a common law duty under any other legal theory.
There is no appellate case law on the precise issue of whether a violation of section 17a-101 of the General Statutes, which requires certain persons to report incidents of suspected child abuse to designated officials or agencies, creates a private right of action. There are two fairly recent superior court decisions, however, which have addressed this issue. In Parker v. Nelson, Superior Court, judicial district of New London at Norwich, Docket No. 107376 (June 16, 1997), Judge Booth struck two counts of the plaintiffs' complaint on the stated ground that "section 17a-101 et seq. does not create a private cause of action." 1997 Ct. Sup. 6975, 6978. Judge Aurigemma, in Doe v. Vibert, Superior Court, judicial district of New Britain, Docket No. 048332 (July 12, 1999), referenced Judge Booth's holding in Parker v. Nelson, but denied the defendants' motion to strike because the plaintiffs' complaint stated a viable cause of action for negligence per se and/or comwon law negligence. 1999 Ct. Sup. 9307, 9312. CT Page 2466
It is important to note that the plaintiffs in the Parker and Doe cases did not rely upon the statute for the claimed duty owed to them by the defendants. In Parker, the defendant was a teacher who received two letters from one of the plaintiff children that she and another child were being sexually abused by a particular individual. The teacher, although aware of two identifiable victims, spoke with the abuser but did not report the abuse as required by section 17a-101. Although Judge Booth concluded no private cause of action existed under the statute, he also concluded that the plaintiffs' complaint stated a cause of action for negligence per se because they alleged the violation of a statute and plead facts sufficient to allege a causal link between the statutory violation and the alleged injury. Similarly in Doe the defendant was a teacher and the plaintiff a student at the same middle school. The defendant teacher actually expressed to the plaintiff her knowledge and concern about another teacher's inappropriate conduct toward the plaintiff Again, there was an identifiable victim and knowledge of harm to that particular victim. In other words, in Parker and Doe the plaintiffs were specifically identified students to whom there was a duty owed from the defendants independent of any claimed duty arising by virtue of section 17a-101 of the General Statutes.
In the present case, the allegations are that various employees of The Village were made aware of Ms. Greene's abuse of foster children placed in her care. None of the incidents were reported, as required by section17a-101 of the General Statutes. Critically, however, none of The Village employees had any contact whatsoever with plaintiffs, unlike the plaintiffs in Parker and Doe. Raegan McBride was not a foster child, she was enrolled in Ms. Greene's day care program. There was no relationship between The Village and the plaintiffs which made Raegan McBride an identifiable victim, so as to create a viable cause of action for negligence per se or common law negligence.
Plaintiffs could cite no case law in Connecticut or other jurisdictions to support their claim that violation of a child abuse reporting statute in and of itself creates a private cause of action. In fact, from a review of reported decisions in other states, it would appear that other courts considering this issue have concluded otherwise.
For example, the Supreme Court of New Jersey in J.S. v. R.T.H.,714 A.2d 924, 934 (N.J. 1998), refused to find the New Jersey child abuse reporting statute constituted an independent basis for civil liability, concluding that a violation does not constitute negligence per se but could constitute evidence of negligence.
Similarly, in Perry v. S.N., 973 S.W.2d 301 (Tex. 1998), the Supreme CT Page 2467 Court of Texas concluded that the plaintiffs could not maintain a cause of action for negligence per se based upon a statute which requires "[any] person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person [to] immediately make a report as provided by this subchapter." Id., 304. Even tough much broader in scope as to the persons mandated to make such reports of suspected child abuse, the Texas statute makes the knowing failure to report a misdemeanor.
The plaintiffs in Perry brought suit against three friends of a day care provider. The day care provider allegedly molested children while in the presence of the defendants. The plaintiffs did not preserve their common law negligence claims, so that the court did not decide whether there should be a common law duty to report child abuse under certain circumstances. After a lengthy discussion, the court concluded that it was not appropriate to create the duty from the statute alone. In reaching this conclusion, the court noted that "a negligence per se cause of action against these defendants would derive the element of duty solely from the [statute]. At common law there is generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress." Id., 306. Further, after discussion of the disparity in penalties imposed criminally for the abusers and the misdemeanor penalty for those failing to report such abuse, no matter how serious the underlying crime, the court noted that "[t]his evidence of legislative intent to penalize nonreporters far less severely than abusers weighs against holding a person who fails to report suspected abuse civilly liable for the enormous damages that the abuser subsequently inflicts." Id., 308. "Because a decision to impose negligence per se could not be limited to cases charging serious misconduct like the one at bar, but rather would impose immense potential liability under an ill-defined standard on a broad class of individuals whose relationship to the abuse was extremely indirect, we hold that it is not appropriate to adopt [the statute] as establishing a duty and standard of conduct in tort." Id., 309.
Mindful of the two Connecticut superior court decisions and case law in other jurisdictions, this court analyzes the issue taking into account the criteria set forth in Napoletano v. CIGNA Healthcare of Connecticut,Inc., 238 Conn. 216, 680 A.2d 127 (1996).
In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted. . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a CT Page 2468 remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? (Citations omitted; internal quotation marks omitted.)
Id., 249.
With respect to the first prong of the Napoletano test, plaintiffs argue that Raegan McBride is clearly one of the class for whose benefit the statute was enacted. As recited in section 17a-101 (a), "[t]he public policy of this state is [t]o protect children whose health and welfare may be adversely affected through injury and neglect. . . ." However, section17a-101d requires the oral and written reports to contain, inter alia, the "names and addresses of the child and his parents . . .; the age ofthe child the gender of the child. . . ; and . . . whatever action, if any, was taken to treat, provide shelter or otherwise assist the child." (Emphasis added.) Courts in other states with similar provisions have concluded the class of persons protected by the mandatory reporting statutes are those children who have been abused and should have been the subject of the required reports. "We agree with the circuit court's conclusion that the Legislature intended that liability under the statute be limited to claims for damages by the identified abused child about whom no report was made. . . . Michigan's child abuse reporting statute creates a private right of action only in an identified abused child." (Emphasis in original.) Marcelletti v. Bathani, 500 N.W.2d 124, 127-128
(Mich.Ct.App. 1993). "Generally, in order to maintain a claim of negligence per se based on the defendant's violation of a statute, the plaintiff must show that he is among the class of individuals that the statute is designed to protect. . . . We believe that [the mandatory reporting statute] imposes a duty which is owed solely to the minor child of whom reports have been received concerning abuse or neglect." Curranv. Walsh Jesuit High School, 651 N.E.2d 1028, 1031 (Ohio Ct.App. 1995).
There are no allegations that Raegan McBride was abused in the presence of Village employees and that they failed to make the mandatory reports concerning that abuse. If the court follows the line of reasoning articulated in the Marcelletti and Curran cases, Raegan McBride is not within the class of persons designed to be protected by this statute.
With respect to the second prong, the court finds that it is implicit from the penalty imposed for failure to report that the legislature did not intend to create a private cause of action for a statutory violation. Section 17a-101a of the General Statutes provides, in relevant part, as follows: "Any person required to report under the provisions of this section who fails to make such report shall be fined not more than five hundred dollars." Regardless of the severity of the underlying CT Page 2469 abuse, the legislature has determined the non-reporter is to be penalized no more than five hundred dollars. The reasoning in Perry v. S.N., supra, is particularly persuasive on this point. As in Texas, a molester or abuser of children faces years of incarceration if convicted of such offenses whereas the person who fails to report such abuse receives a relatively modest monetary fine. "This evidence of legislative intent to penalize non-reporters far less severely than abusers weighs against holding a person who fails to report suspected abuse civilly liable for the enormous damages that the abuser subsequently inflicts." Perry,973 S.W.2d 301, 308.
The third prong of the Napoletano test is whether it is consistent with the underlying purposes of the legislative scheme to imply a private remedy for the plaintiff. If this court concludes a duty arises solely from the violation of the statute, this means that a failure to report a single incident of suspected child abuse could result in the non-reporter's liability for substantial damages caused by the abuser to another child with whom the non-reporter has no relationship whatsoever. If a physician, a mandated reporter, sees his patient, a child, and fails to report suspected abuse by the child's parent, the physician would be liable if a friend of the abused child is subsequently abused months later by that parent. In this scenario, the physician would not know the friend of his abused patient, would not have a doctor-patient relationship with the more recently abused child, and yet would be liable for enormous damages for physical and/or emotional injuries suffered by the more recently abused child because the physician failed to report the single incident of suspected abuse of his patient.
That is precisely the theory of plaintiffs' case. Ms. Greene allegedly abused several of her foster children; there is no allegation that employees of The Village witnessed the abuse of Raegan McBride in Ms. Greene's day care program. The Village had no relationship whatsoever with Patrice Ward or Raegan McBride.
This is not to say the court condones the alleged conduct of The Village. If, indeed, its employees were aware of the numerous incidences of abuse allegedly perpetrated upon several foster children by Ms. Greene while under her care, the failure to report such abuse is heartbreaking and inexcusable. Nevertheless, as in the Perry case, supra, this court must be mindful that in finding a duty based exclusively upon the statute, the court's ruling would encompass situations involving the failure to report severe physical and sexual abuse to an identifiable victim as well as the situation described above in which the physician's failure to report a single incident of suspected abuse results in liability to a victim the physician does not even know. The underlying purpose of this legislation is not to create unlimited liability to a CT Page 2470 non-reporter with an indirect or nonexistent relationship to a victim of child abuse.
For these reasons, the court concludes that section 17a-101 of the Connecticut General Statutes does not create a private cause of action and grants The Village's motion for summary judgment as to count twelve of the plaintiffs' amended complaint.
Count Sixteen
Count sixteen, captioned "42 U.S.C. § 1983", alleges The Village displayed a mental state of deliberate indifference to the risk of injury to Patrice Ward and Raegan McBride and that Patrice Ward has suffered damages in her individual capacity due to The Village's acts and omissions.[3]
 42 U.S.C. § 1983 provides, in relevant part, as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." "[I]n any section 1983 action the initial inquiry must focus on whether the two essential elements to a section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under coloLof state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." (Citation omitted; internal quotation marks omitted.) D'Amico v. Johnson, 53 Conn. App. 855, 859-860, 733 A.2d 869
(1999). The Village initially moved to strike count sixteen, claiming that it was not acting under color of state law. The court, Koletsky, J., denied the motion as to this particular count because "[p]roof of `state action' is intensively fact-bound." Ward v. Greene, No. X04-CV-99-0120118-S (March 21, 2001). The Village now seeks summary judgment as to count sixteen on the grounds that Connecticut's wrongful death statute precludes Patrice Ward from recovering damages in her individual capacity under section 1983 for the death of Raegan McBride. The defendant cites the case of Perkins v. Salafia, 338 F. Sup. 1325
(D. Conn. 1972) in support of its position. In Perkins a suit was instituted by Alfred Perkins and Eleanor Perkins, the mother of decedent Roger Perkins, individually and as administratrix of her son's estate, pursuant to 42 U.S.C. § 1983, 1985, 1986 and 1988, against certain state police officers. The defendants moved to dismiss the counts brought by the two plaintiffs in their individual capacities. Judge Blumenfeld, in applying Connecticut law, concluded that Connecticut's wrongful death CT Page 2471 statute provides an adequate remedy to vindicate the section 1983 claim and that Connecticut does not provide for an additional remedy for the plaintiffs in their individual capacities. Noting also that Connecticut law does not support claims for loss of filial consortium, the District Court dismissed the claims of the plaintiffs as individuals.
The plaintiffs contend Perkins is not applicable to this case because the individual plaintiffs in Perkins did not claim the violation of substantive constitutional rights. Count sixteen alleges The Village's conduct deprived Patrice Ward and Raegan McBride of their "constitutionally protected liberty and/or property interests" and violated their "substantive due process rights." With respect to Raegan McBride, section 52-555 of the General Statutes, Connecticut's wrongful death statute, is the exclusive remedy for her death. Lynn v. HaybusterManufacturing, Inc., 226 Conn. 282, 627 A.2d 1288 (1993). With respect to Patrice Ward individually, there are no factual allegations which support the mere conclusion of law that substantive due process rights were violated. Any loss suffered by Ms. Ward individually which is the direct consequence of her daughter's death is a derivative claim and, therefore, not compensable under the statute. Id.
Plaintiffs urge the court to disregard Perkins and follow the ruling inMadden v. City of Meriden, 602 F. Sup. 1160 (D. Conn. 1985). Madden, however, is clearly not applicable to the facts in this case. In Madden, the plaintiff brought her claim as administratrix of her son's estate; she did not bring a claim in her individual capacity.
For the foregoing reasons, the court follows the holding in Perkins and grants The Village's motion for summary judgment as to count sixteen of the plaintiffs' amended complaint.
Counts Seventeen, Eighteen and Nineteen
Count seventeen is a claim that The Village made fraudulent misrepresentations to Patrice Ward, causing said plaintiff to suffer damages in her individual capacity. Count eighteen is a claim that The Village made negligent misrepresentations to Patrice Ward, causing said plaintiff to suffer damages in her individual capacity. Count nineteen claims that Ms. Greene was acting as an agent of The Village as a licensed day care provider and/or foster parent and that The Village should have been aware of problems with her treatment of children. It is further alleged that their failure to investigate these problems or take any other action caused injury to Patrice Ward in her individual capacity.
The Village moves for summary judgment as to the fraudulent and CT Page 2472 negligent misrepresentation counts on the grounds that Patrice Ward never spoke with anyone at The Village before or during her daughter's placement at Ms. Greene's day care facility. The court has reviewed the affidavits and other documentation submitted with the motion for summary judgment and plaintiffs' objection thereto. Although plaintiffs state there are sufficient questions of material fact to preclude entry of summary judgment on these counts, nothing has been submitted to the court to put the matter in issue. Instead, plaintiffs argue that Ms. Greene's actions do not relieve the defendant of liability and that Raegan McBride's death was foreseeable. Such statements are insufficient to Support an argument that there are factual disputes as to the claims of misrepresentation and, accordingly, the court grants The Village's motion for summary judgment as to counts seventeen and eighteen of the plaintiffs' amended complaint.
Similarly, with respect to count nineteen, which basically claims The Village negligently retained Ms. Greene as its agent, there is nothing in any of the documents submitted to the court to indicate The Village was in any way connected with Ms. Greene's day care program or that Ms. Greene was an agent or employee of The Village for day care purposes. There is no genuine issue as to any material fact. The court grants The Village's motion for summary judgment as to count nineteen of the plaintiffs' amended complaint.
Conclusion
For the foregoing reasons, the court grants The Village's motion for summary judgment as to the remaining counts directed against The Village. Judgment enters in favor of The Village as to counts twelve, sixteen, seventeen, eighteen and nineteen of the plaintiffs' amended complaint.
BY THE COURT
McLACHLAN, J.